shortly. I'll be arguing on behalf of the Pellant Global Crossing in this case. With the Court's permission, I'd like to reserve five minutes of my time for rebuttal. You may, but you'll have to help keep track of your time. Thank you, Your Honor. Because that shows the whole time that's released. Your Honor, there are two issues presented in this appeal. One is the existence of a private right of action under more general provisions of the Communications Act to enforce regulations that the FCC adopted under a very specific provision of that Act. Second is whether 276C of the Act preempts inconsistent State requirements such as the common law clauses of action that appellee Metrophones sought to raise raised in its complaint and seeks to raise in its amended complaint. With respect to the first issue, Your Honor. May I ask you whether the damages sought are redundant? In other words, if you went on – if you have a private right of action under one, is it the same set of damages as the other, the State claims? Your Honor, I – the way the – the way appellee phrased that – framed the issue, the answer would be yes. I would argue, Your Honor, the answer is not necessarily yes for the following reasons. The FCC's regulations do set up a very precise scheme as to what calls are responsible, which party has to pay, which party has the obligation to track and pay. The elements under each of the State common law clauses of action, just the basic elements of the clauses, do not track that scheme. For example – Well, the elements don't, but what are the amounts that could be recovered? Would they differ? Under the – under the elements, they could very well differ. For example, under an implied – under an unjust enrichment theory, the court or a jury would be called upon to define what the reasonable value of services rendered, if any, were. That would not necessarily track the $0.24 per compensable call set forth in the FCC regulations. The State common law clauses of action could also assign liability, for example, the negligence cause of action alleged by appellees, to a party that is inconsistent with the regulations set forth by the FCC. To that extent, on the preemption issue, since we're there, if I may address that, 276C states that FC – the FCC regulations adopted pursuant to Section 276 shall not preempt inconsistent State requirements. There are, therefore, three issues to consider on the preempt – on the – or three questions to consider on the preemption issue. First, has the FCC adopted regulations? That's clear. They have. Second, is the appellee seeking to invoke State requirements in the words of the statute? The answer to that, I think, clearly is yes. The Supreme Court has held in CSX, Dyer, and Spreetsma that the word requirements or comparable words may encompass, do encompass State common law clauses of action. The third issue is, are those clauses of action, are those State requirements inconsistent with the regulatory scheme set forth by the FCC in the regulations it adopted under 276? The answer to that question, Your Honors, I believe is also yes. First, as I've mentioned, the FCC set up a very precise scheme defining the rate, defining precisely what types of calls compensation is due on, and defining from which carrier, which one of the inter-exchange carriers in the call path, the The FCC set forth those regulations to govern each and every complete interstate and intrastate call that is completed from a pay phone. That evidence is a national – a national scheme. And to that extent, that there are State law – that there could be – that to the extent that the State law – the State common law clauses of action invoke different theories, invoke different elements, is asking different judges, different juries in different States to reach or permits them to reach results that are not consistent with that statutory scheme. To that extent, and as the Supreme Court has held, the preemption analysis in the first instance is to look to the intent of Congress in the Louisiana PFC case, for example. Looking at the clear words of Section 276 – of 276C, these State requirements, the State – the State common law clauses of action are preempted by the force of the FCC's regulations. Your Honors, with respect to the private right of action issue, given this Court's holdings in green, A, that there can be no violation of Section 276 itself because it does not create a duty on the part of inter-exchange carriers to pay compensation, and, B, there was no right – no implied right of action to enforce either the statute itself or the regulations adopted under 276 because this Court could not discern that Congress had such an intent. The question becomes, may Apelli achieve, in this Court's words, in Wall v. Wells Fargo, can Planeth achieve through the back door what was not available through the front door? Well, without deciding which is back and which is front, Green didn't deal with Section 201b, and that's at least part of what we have to consider here. So that piece of this case is new. And so what is it about Green that is more persuasive than the Commission's own analysis with respect to 201b? If you look at Section – let's examine first the Commission's analysis of 201b and then the statute itself. In the Commission's conclusion that a violation of the regulations adopted under 276 itself violates 201b, it's in paragraph 32 of its 2003 order. It is one sentence in an order that addresses an entirely different topic. It is a piece of dicta with no support and no analysis. That can't be said of its amicus brief, though. It's taken a position that's explained its position, and it seems, to me at least, that we owe some deference to that statement of position. The deference owed would be no different than the deference owed to any other position taken by any other appellate counsel. That is, if this were on review, the FCC's justification has to stand on what the Commission itself said, not on what its appellate counsel said, that it's clear from Chenery, it's clear from Bolland. So to the extent that one – There's also a statement in Auer v. Robbins, though, that the position in an amicus brief can, in some circumstances, be persuasive if it's – if it represents the agency's reasoned thinking, and there's no reason to think that the agency would disavow it. The agency would not disavow it. No argument with that, Your Honor. I think the precise question is, is the statement entitled to deference under Chevron, and I submit the answer is no, simply because it – for the obvious reason, the first reason, that it's not the – that what's in the amicus brief is not the agency's own reasoning. Well, I – you know, we – we have a lot of trouble with Chevron from time to time. Do we really have to go there? Your Honor, I would submit we don't even have to go to Chevron. If you look at the – at the language and structure of 201B itself, 201B does not cover the situation. 201B proscribes unjust and unreasonable charges, classifications, practices, and regulations for in connection with a common carrier, a communications service. That statute has been consistently held to apply to a situation where a common carrier is acting as such, namely providing services to its customers. This is not that situation. If anything, Global Crossing would have been buying service from Metrophones, presumably the availability of its pay phones. That's not for or in connection with a common carrier service. And the cases cited, I think, reinforce that point. MCI, cited by Appellee, cited, I believe, by the FCC, was a rate – was a case where there was a rate – where the FCC prescribed a maximum rate of return. The violation in that case was by a common carrier providing services at a rate that – that generated a rate of return in excess of what the FCC found. That case, the violation did not turn solely on the violation of the prescription, of the rate of return prescription, but on a direct violation of 201B for charging an unjust unreasonable rate. Second, Your Honor, the case of California Independent System Operator, which is under the Energy Act, not the Communications Act, admittedly, but it has parallel provisions, puts the – basically stands for the proposition that the Court has to look at the terms, classification, in that case, rate, charges, and particularly practices in the statutory context, and that the term practice, which is what Appellee and what the FCC seek to do here, cannot be wrenched out of that statutory context, which deals with a common carrier acting as such in providing services to its customer. The case – the Trinko case in the Second Circuit is no different. The violation there was Bell Atlantic, in that case, providing services to its customer, AT&T, in a discriminatory manner, and the violation there was that Bell Atlantic that was sufficiently alleged to have violated 202A. The damages flowed to another party because of the structure of 206 and 207, but nonetheless, the statutory predicate that there be a violation of the Act was present in – was present in that case. Your Honor, the principle under 201 – So let me – let me just move back a step and ask a more global question. In your view, if the dial-around calls are not properly paid for, what is the remedy? The remedy is for the FCC to take whatever – to take the actions that are available to it as the regulator under Title V. So the unpaid party has no recourse directly, in your view? That would be – Anywhere, not Federal, not State. That would be – that would be correct, Your Honor. There would be no private damages remedy. As the Supreme Court has indicated in Sandoval, there are two – there are two things the courts must look at. Did Congress create a private right? And independent of that, did Congress create a private remedy? I think the answer to the second question, at least, which is the one here, is no. That private remedy was not created. To that extent, it's not – it's not a case of something being taken away, a right being taken away. It's a right that never existed in the first instance. Briefly, with respect to the other things, I think the answer to the second question is no. There's a regulation that gives people the right to be paid. You're just saying that unless the Commission chooses to do it for them, they can't do it for themselves. That is correct, Your Honor. Because Congress has to create the cause of that, the private cause of that. That is correct, Your Honor. It's up to Congress to create that right, in our view. And I think the structure and text of the Act is very clear. Congress did not create that right. But it can do so implicitly as well as explicitly, under using court versus Ash factors. I mean, there are situations in which courts decide that Congress must have meant for someone to have the opportunity to vindicate a right. That's absolutely correct, Your Honor. There is no – there is no requirement that Congress state specifically in the statute, there shall be a private right of action here. In fact, I would note it did that in 227, at least with respect to the rights. But under the court v. Ash – under the court v. Ash factors, the key factor to look at is congressional intent. It's the second of the four factors. And I think the court's logic in Green would lead to the conclusion that there is no private right to enforce the 276 regulations under whatever guise. The D.C. – the D.C. Circuit is on a different direction on this? The D.C. Circuit has not addressed this issue precisely, Your Honor. The two cases cited, APCC was an appeal – was a petition for review of the agency's actions in setting one of the pay phone rates. The Global Crossing case basically assumed that a private right to action exists. The question of whether one existed or not was simply not in front of the court in that – in that case. With respect to 416C, 416C does provide that it is a duty on the part of every person to observe and comply with FCC orders. To read into that, however, a right of action under 206 and 207, I submit, stretches that – stretches the language and the purpose of – and the structure of 416 and Title IV beyond the breaking point. Title IV of the Communications Act is – is entitled Procedural and Administrative Provisions. There are a number of provisions that have consequences, that trigger consequences for violation of an order. 401B, for an order not for the payment of money, may be enforced by a private party through injunctive relief. 401A and C permit the FCC to do that. What is – I'm sorry. Go ahead. I'm sorry. Our 407 provides for the district court enforcement of an order for the payment of money, which is not what is here. What is absent from that entire structure of Title IV is a private right of action for damages, a private damages remedy for a violation of a commission order. Now, let me ask you, though, because your time is running short. What is the effect, if any, in your view of Sections 206 and 207, which pertain to liability for damages and recovery of damages? You have to – 206 and 207 provide the vehicle if there is a – if there is a violation – if there is a violation of the Act. I think reading 416C – Does that include a violation of a regulation promulgated under the Act? It clearly – it does not, Your Honor. It includes – it goes to violations of the Act itself, specifically not regulations under the Act. Or at least that's what we said in – we seem to say in Greed. That is what this Court said in Greed, is what the Second Circuit said in Convoy, et cetera. If you want to reserve any time, that would be better. I would, please. Thank you, Your Honors. Good morning, Your Honors. My name is David Russell. I represent the appellee Petrophones Telecommunications. With me at counsel table is Amir – Mr. Amir Heshmatpour. He is the president of Petrophones. This was and is a simple collection action designed to collect for approximately 130,000 unpaid toll-free or dial-around calls made from my client's payphones and completed by Global Crossing, for which Global Crossing should have paid but has refused to pay. What Mr. – what Global Crossing would ask this Court to find, using some combination of Green and an elimination of Sections 206 and 207 from the Act, and also under preemption, that my – that my client, a payphone owner, could have his phone used for calling card calls. There is compensation clearly due for those calls. The carrier could refuse to pay for those calls, and my client would have no remedy either in Federal court or in State court. What – have you – have you pursued any remedy before – with the FCC? The answer is no. The original complaint was filed in U.S. District Court in the case that is now before this Court. Interestingly, Mr. – there are two responses to that. One is that Section 207 provides for alternative forums that can either be before the FCC or in the U.S. District Court. But Global Crossing here this morning, we should be clear, is not saying that – that payphone owners can go to the FCC and file a complaint and get compensation that way. What – what Global Crossing is saying is that under Title V, a complaint can be lodged with the FCC and carriers may be fined, but there would still be no compensation flowing to my client, the payphone owner, even though it's clear under the regulations that compensation is due. We submit – But let me just ask you, the sort of bottom line issue that I have with your position is the Green case. If we were writing on a clean slate, everything that you say flows nicely. And at least on the surface, it looks as if Green puts up a big brick wall to your reading of 206 and 207. Where do we – where do we go from there? What's the distinction? I'm glad you asked that question. I should start with the – maybe the obvious proposition that my client and also the FCC in its amicus brief disagree with the holding in Green, but that's not what's at issue. We can't. That's not what's at issue. There's another three-judge panel. Right. We're – And I understand that this panel cannot reverse Green. But the important thing about Green is that it's a very narrow holding. The only claim at issue before the Ninth Circuit in Green was a direct claim under 276, and the panel there seemed to look to the – to that section of the statute to see whether there was any language requiring the carriers to do anything. The – Section 276 is directed to the FCC. It's directed to the Commission. And therefore, they found there was no express right of action under Section 276 and also no implied because of a reading of Part B and – You're trying to obtain relief, essentially, for a violation of a regulation that's – that sets the amounts that are to be paid. Correct. And in Green, you said we declined to attribute a similar intent to the regulations given in – prescribed by 276, given that Congress knew how to create a private action for violating a regulation when it wanted to, yet did not include an action for violating the regulations contemplated by 276. Well, I – I don't – how do you deal with that language? Well, I agree that it did not in Section 276, but it – there was not before the Court in Green Section 201B or 416C. And 206 clearly says – Well, but they're the same regulations, aren't they? Well, it would be the same substantive law being applied, but the issue is, is there a private right of action created for a particular act? And here, under 206, it says that a common carrier shall do any act prohibited or declared to be unlawful. So it can be in any section of the Act. It doesn't have to be in Section 276. In this chapter, prohibited or declared to be unlawful. Correct. And 201B is in the chapter. What we – And it says you can't charge anything that's unjust or unreasonable, and if you do, it's unlawful. You can't – you also can't have a practice that is unreasonable or unjust. And the important aspect of that is both the FCC, both in its order from 2003 and also in its amicus brief, would say what we're talking about here is a practice that is unjust or unreasonable under Section 201B. What is the – what is the authority that the nonpayment of the rates is a – is a practice? That the nonpayment of rates under the regulations is a practice. There's the – It's nonpayment of rates, period. Yeah. Well, there – there obviously is no case that has addressed that issue, because Greene is a recent case. And as far as I know, no one else except the APCC plaintiffs in the D.C. Circuit have made the argument that there is a claim under 201B. But as far – if the issue is, is 201B to be – Are these the only rates that are established under the – by the FCC? No. There are many others. Yeah. Well, then what – and those, what's the – Right. What is the authority that says that the nonpayment is a practice? The – the authority that I would point the Court to is the AT&T v. Cord Lane case, which I cited on page 11 of my brief. That's a 2002 decision of this Court. And it says, While plaintiffs typically invoke Section 207 in damages actions alleging deviation from common carrier's filed rates, the provision is equally applicable where a claim – where a claim involves a complete denial of service in violation of Section 201. And that – that just makes it clear that Section 201 is frauder than just the deviation from a common carrier's filed rates. I would like to address the preemption issue. The State law causes of action that I asserted and that Judge Peckman found were viable claims, the issue is whether there is a conflict between the FCC's regulations and those State law causes of action. We have a very narrow preemption provision here. The Congress made it clear that they did not intend complete preemption. They said if a State law claim is inconsistent, it's preempted, but nothing else is preempted. Judge Graber, you asked earlier whether the damages sought are redundant. The answer is they are not. These are alternative causes of action. And we're seeking the exact same damages, $0.24 per call for the 130,000 calls under either the Federal claim or the State law. Let me ask you something else about Section 276C. Pardon me. It refers to State requirements. What does that mean? Does that mean that any claim under State law that's inconsistent with the regulations or does that merely mean any State analogous commission requirements? The case law, I agree with Global Crossing on this issue, the case law confirms that State requirements would include State causes of action. That is a State requirement. What they're trying to do with what Congress is trying to do, I believe, in preemption provisions such as this, is to make sure that the States aren't making it impossible for persons regulated by the Federal government to comply both with the Federal regulations and also with State law. You see this come up frequently in railroad cases. They don't want to have a train hit a State line and have to slow down to meet with that particular State's requirements. They want to make sure that the requirements are consistent. And that's all that this is here. It is a very narrow preemption provision. And Judge Peckman below relied on the Total TV case, which had an almost identical express preemption provision. And that Court, in looking at that preemption and the plaintiff's antitrust State law antitrust claims, found that the preemption provision was simply a recognition that Congress did not intend to fully occupy the field of cable television regulation. And then it found because the purposes of the cable acts in the State antitrust laws are consistent and a hypothetical conflict is not a sufficient basis for preemption, the California antitrust law is not preempted. There are two important ideas in the Total TV case. One is that you look to the purpose of the two, of the regulation and the State law claim, and see if the purposes are inconsistent. Here they are not. And the other is a hypothetical conflict is not a sufficient basis for preemption. And what I hear Global Crossing arguing is based on hypothetical conflicts that may be there but aren't currently because we're seeking 24 cents a call for 130,000 unpaid calls. So you're, you're, and there are no other damages in either claim? Correct. The, the, the only issue here is whether Global Crossing failed to pay for compensable calls, and the rate is the same under the State law causes of action and the Federal regulations. The, there is one district court within the Ninth Circuit that has addressed the State law preemption issue. That is, this precise issue that's before this Court. It was in the remand removal context, but it was the decision of Magistrate Chin in Precision Payphone's bequest, 210F sub second 1106. In that case, Magistrate Chin held there is no compelling need for a Federal forum to, for example, facilitate national uniformity in the interpretation of Federal law. He also held that there is the, as demonstrated by the limited scope of the preemption provision of 276C, State court enforcement was not of such central concern to the Federal statute so as to advance Congress's intent to completely displace State court jurisdiction over suits to collect dollar-on-compensation. The overall argument here is, by Global Crossing, is one of policy. What they would like, and they take some language from Green, where the court in Green was interpreting section 276 and found no express right of action there, they would like to rely on that policy language in Green to, to argue that the Federal, that Congress announced that the FCC is the only entity to decide these issues because they're very concerned about Federal, about national uniformity. That policy argument can't possibly override the statutory language in section 201B and 416C. If there's a private right of action under 201B, in other words, if failure to provide just and reasonable services leads to a cause of action under 206, it's not appropriate to rely on a policy argument that, from the Green case, that involved a different section to take, take that private right of action away. The let me conclude, if I could, with an analysis of just how narrow the Green decision was, because I understand that it is a recent decision by this Court. The, if you look at the Green decision, it was, it was a, it was a, it was a, it was a, it was a, a pure legal issue of whether or not Congress in section 276 spoke to toll carriers that they could or could not do something. And once the Court found that that language was not there, the easy conclusion under Sandoval, Alexander v. Sandoval, was, well, there's no language in this statute that creates a private right of action. And in some respects, although I disagree with the holding, I understand the, the case, the, there's no way to apply that rationale to other sections of the Telecommunications Act of 1996, especially when a carrier here is requesting such draconian relief. They're essentially allowing them to just simply refuse to pay for telephone calls placed from my client's pay phones. It, there must be some relief in some forum that would allow my clients to sue a long-distance carrier for the refusal to pay, or an unjust or unreasonable practice of not counting calls and compensating. Ginsburg. Let me just ask you a question on your State law claim. Is that a, what is that, quantum merit, is that the theory? Yes. Well, how can there possibly be not, if, if, if the theory is you have to pay, you have to pay what the services are worth, that's really what quantum merit is, how can you possibly avoid interference with the, with the Federal Communications Act if you have different State courts all over the country, or different courts all over the country, deciding what the services were? Well, in this particular case, since I represent the plaintiff, we control that issue. And we, we, we have the ability to say we are seeking 24 cents per call, and therefore there is no conflict. I agree with you that in other cases, in future cases, there is no direct ability to control that. Well, we can't limit State law to, to say that you can only give what the, what the FCC has said, you know, the service is only worth under State law. Correct. I guess my, my response to that question is, again, based on the Coeur d'Alene case, I'm sorry, the, the Total TV case, the important holding in the Total TV case is that a hypothetical conflict is not a sufficient basis for preemption. I don't know why you're, I mean, you've also brought a claim, I think, not just for quantum merit, but for an implied contract in fact. Yes. I mean, just for the 24 cents. Correct. And that would, that would not carry the same danger, I presume. It, it would. Because what you're saying is they have actually agreed to pay us what the FCC says they have to pay us, and all we are doing is trying to enforce that written agreement basically. It's written in the order and so forth. So that would not carry the same danger as quantum merit. I agree completely. The, the, it would be the, the decision to accept calls from my clients' pay phones and to complete them, that that would be a problem. It's a unilateral, acceptance of a unilateral contract. Agreed to. For the 24 cents. Let me, let me conclude with these comments. I believe that Section 201B and 416C preclude carriers from unreasonable practices and for violating the FCC's orders. Those are the acts that my client alleged in the, in its amended complaint. And I believe that Judge Peckman was correct when she determined that Sections 206 and 207 of the Act allow an injured party to choose the forum. It, the injured party can either file a complaint with the FCC or can bring a claim in the district court. That language is in Section 207. And I submit that there is no way to interpret Section 207 that would allow for a cause of action to be filed before the FCC but not allow one to be filed in a U.S. district court. It's very clear that, that someone injured may either make a complaint to the commission or may bring a suit for the recovery of damages in the district court of the United States. So you can't argue that the FCC is the proper forum for these claims under 207 without. I think their argument is a slight variant of that. I think their argument is that you can never make a claim for these damages, that only the, the commission can decide to enforce its order on its own hook. But I take their argument to be that you don't have anything under 207 either way. I hear that this morning for the first time. I think they suggested in the brief and I think the Ninth Circuit in the Green case suggested that the proper forum for these claims was the FCC. But here today we hear you don't have any right under 207. At least that's how I understood it. You don't have any right under 206. If we want to refuse to pay for the phone calls, you can't sue us in State court, you can't sue us in Federal court, you can't sue us before the FCC. We can just get away with it because there's no, because of some combination of Green v. Sprint and the preemption provision. And I just think that's a stretch of the section of the preemption provision in 276 and also ask this Court to ignore the language of 201b. Finally, I believe there's no conflict between the FCC's regulations and a State law cause of action that merely seeks to confirm that a long-distance carrier must pay for all dial-around calls completed by it at the rate of 24 cents per call. Section 276 is an express and narrow preemption provision that does not preempt my client's State law claims. Thank you, Your Honors. Thank you, counsel. Let me just ask you this. Does your client ever intend to pay these rates or what's? Your Honor, as far as payment, if you look in the record, it's attachment A to the complaint. In fact, we did pay a significant portion of what's being claimed, not everything that is being claimed. And we would argue, although this is a factual matter, obviously, that Global Crossing, in fact, did pay Metrocom what it was required to under the Act. Whether other carriers may have owed something or whether the calls were simply not completed would be a factual issue. But as, you know, as I think the Court can tell from the complaint, in fact, this is not a case where we're simply saying, no, we're not paying anyone. We believe we have paid what is owed. Two issues. Two issues, Your Honors, in reply. One is for 206 and 207 to create a private damages remedy, there must be a violation of the statute, not of the regulations, but of the statute. And the statute requires people to comply with orders of the commission. The statute requires that. 416 provides a duty to comply with an order. 416 itself, given where it is in the Act, I would argue does not create substantive rights. And if there are violations of the 416C duty, there are specific remedies in 4, in Title IV and in Title V that do not encompass a private damages remedy. And I think 4, as I mentioned, is entitled procedural and administrative provisions. It has specific actions that can be taken for specific types of orders. And 201B says no practice, no charge that's unjust and unreasonable. If you do it, it's unlawful. If there is a violation of 201B, Your Honor, I would agree that would provide the basis for a private damages remedy. 201B, however, as a substantive matter, does not apply in this case. It does not address the 201B addresses actions by carriers as carriers. That is in providing service. That's MCI. That's TRNCO. So 201B has not been violated. And to that extent, there is no private right of damage. There's no damages remedy through 206 and 207. Because the predicate substantive violation of the Act has not taken place. With respect to preemption, Your Honors, two very minor points. A, Appellee's counsel posits an impossibility standard, impossible to comply with both. That is not what the Supreme Court has held. CSX is clear on that, particularly that part of it dealing with the maximum train speed. Second, total tell is not on point. If the statute there simply says a State shall not regulate the rates for cable service, the California Unfair Practices Act didn't go to the regulation of the rates. And the Ninth Circuit, this Court, was clear on that. To that extent, Your Honor, what the Court needs to look at is, is there a private remedy, a private damages remedy that Congress has created? Did Congress manifest that intent? I would submit, Your Honor, the answer to that question is no. Thank you, counsel. The case, as argued, is submitted for decision. And before hearing the last case on the calendar, the Court will take a 10-minute recess. All rise. This Court stands at recess for 10 minutes. Thank you.
judges: Schroeder, Goodwin, Graber